## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SNOW SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 5842 |
| v. | ) | |
| | ) | |
| SNELLER'S LANDSCAPING, LLC, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Snow Systems, Inc. brings this action against defendant Sneller's Landscaping, LLC to redress alleged trademark infringement and dilution, unfair competition, and false advertising under the federal trademark statute, the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c). Currently before the Court is Sneller's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2), R. 11. For the following reasons, the Court grants Sneller's motion.

### BACKGROUND

Snow Systems is a corporation organized under the laws of Illinois with its principal place of business in Illinois. R. 1 ¶ 1. It provides commercial snow and ice removal and sidewalk shoveling in Illinois, Indiana, Ohio, Wisconsin, Pennsylvania, Colorado, Massachusetts and Tennessee. *Id.* ¶¶ 1, 8. Sneller's—which is headquartered in and has its principal place of business in Michigan—has been performing similar snow and ice removal services in the Grand Rapids and Lansing, Michigan areas since approximately 1999. *Id.* ¶¶ 2, 16, 21; R. 11 ¶ 5; R. 11-1 ¶¶ 7-10.

Sneller's has no offices or real estate in Illinois, is not registered to do business in Illinois, has no agent in Illinois, and has never performed snow or ice removal services in Illinois. R. 11-1 ¶¶ 8, 13-15, 17.

In March 2013, the United States Patent and Trademark Office issued Snow Systems a trademark for "SNOW SYSTEMS," with notation of first use on September 1, 1979. R. 1 ¶ 10. Then, in May 2015, Sneller's registered with the Michigan Department of Licensing and Regulatory Affairs as doing business as "Sneller Snow Systems." *Id.* ¶ 19; R. 11-1 ¶ 5.

On August 27, 2018, Snow Systems filed a three-count complaint against Sneller's alleging trademark infringement under 15 U.S.C. §§ 1114 and 1125(a) (Count I), trademark dilution under 15 U.S.C. § 1125(c) (Count II), and unfair competition and false advertising under 15 U.S.C. § 1125(a) (Count III). R. 1. The crux of Snow Systems' complaint is that Sneller's use of the d/b/a "Sneller Snow Systems"—which is similar to Snow Systems' trademark "SNOW SYSTEMS"—in its domain name, as an Internet search engine keyword, in publications, and at trade shows and symposiums despite Snow Systems' repeated requests that it stop, capitalizes on Snow Systems' hard-earned reputation and violates the Lanham Act in various ways. *Id.* ¶¶ 3, 13, 19, 22-23, 25, 33. Snow Systems seeks (among other things) injunctive relief, compensatory damages, profits derived from Sneller's allegedly wrongful acts, treble damages, costs, attorneys' fees, expenses and pre- and post-judgment interest for this alleged wrongdoing. *Id.* at 8-10.

On November 20, 2018, Sneller's moved to dismiss Snow Systems' complaint under both Federal Rule of Civil Procedure 12(b)(1) and (2) for lack of subject matter and personal jurisdiction. R. 11. In its motion, Sneller's contends that this Court lacks both because Sneller's serves only Michigan clients and has thus neither engaged "in commerce" within the meaning of the Lanham Act, nor purposefully availed itself of the privilege of doing business in Illinois. *See generally* R. 11; R. 12. Snow Systems alleges that the Court has subject matter jurisdiction because its claims arise under the Lanham Act, 15 U.S.C. § 1501, *et seq.*—a federal law. R. 1 ¶ 4. Snow Systems alleges that the Court has personal jurisdiction over its claims because Sneller's "caused its snow removal services to be advertised and promoted in this judicial district" through its "ongoing website presence," and the claims "arise out of [Sneller's] contacts with," and Sneller's has caused "tortious injury" to Snow Systems in, "this judicial district." *Id.* ¶ 6. The Court will address each jurisdictional question in turn, beginning with subject matter jurisdiction.

## ANALYSIS

## I. Subject Matter Jurisdiction

Snow Systems alleges that this Court has subject matter jurisdiction over its claims under the Lanham Act, 15 U.S.C. § 1501, *et seq.*, and under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, 1338 and 1367. R. 1 ¶¶ 4, 5. Snow Systems purports to allege that this Court has subject matter jurisdiction based on both diversity and a federal question. In truth, because Snow Systems brings only federal claims, only Snow Systems' allegations of federal question jurisdiction warrant discussion. In other

words, if the federal claims fail, it is irrelevant that the parties are diverse. Sneller's argues that the Court lacks subject matter jurisdiction despite that Snow Systems presents a federal question under the Lanham Act because, in providing services only in Michigan, Sneller's is not engaged "in commerce" within the meaning of the Lanham Act. R. 12 at 11; R. 11-1 ¶ 8. In response, Snow Systems contends that whether Sneller's is acting "in commerce" goes to the merits and is not an appropriate subject for a motion under Rule 12(b)(1). R. 13 at 3.

The Court notes that there is some question as to whether this issue is properly addressed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim instead of 12(b)(1) for lack of jurisdiction. *See, e.g.*, *Steele v. Bulova Watch Co.*, 344 U.S. 280, 282 (1952) (analyzing extraterritorial application of Lanham Act "in commerce" requirement under Rule 12(b)(1)); *see also IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*, 191 F. Supp. 3d 790, 803-804 (N.D. Ill. 2016) (collecting cases analyzing extraterritorial application of Lanham Act "in commerce" requirement under Rule 12(b)(1), but analyzing the issue under Rule 12(b)(6) instead); *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 713-14 (N.D. Ill. 2014) (complaint adequately plead "use in commerce" requirement under Rule 12(b)(6)); *Am. Dairy Queen Corp. v. Augustyn*, 278 F. Supp. 717, 722 (N.D. Ill. 1967) (allegation that plaintiff actively engaged in interstate activities "designed to promote [its] trademark" sufficient to state a claim under Rule 12(b)(6)). And the distinction matters: analysis under Rule 12(b)(1) allows for the Court's consideration of external evidence and requires the plaintiff to demonstrate that jurisdiction is proper, while analysis under Rule 12(b)(6)

generally requires a court to accept as true all of the well-pleaded allegations in the complaint subject to the limitations set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Id.* at 806-807; *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (a court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists" (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008))).

"Though subject-matter jurisdiction generally should be considered before personal jurisdiction, a district court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists." *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 n.2 (7th Cir. 2000) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (7th Cir. 1999)). Indeed, "there is no unyielding jurisdictional hierarchy." *Ruhrgas AG*, 526 at 578. As discussed below, Snow Systems failed to meet its burden to establish the Court's personal jurisdiction over Sneller's. Accordingly, the Court exercises its discretion to dismiss Snow Systems' complaint on that ground alone without deciding whether Sneller's motion is properly made under Rule 12(b)(1), and if it is, whether to grant it on that basis. *See Livingston v. Hoffman-La Roche Inc.*, 293 F. Supp. 3d 760, 765-66 (N.D. Ill. 2018) (dismissing for lack of personal jurisdiction without first addressing subject matter jurisdiction because personal jurisdiction issue was "straightforward").

## II.    Personal Jurisdiction

### 1.    Standard

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.* The court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has set forth a *prima facie* case for personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877-78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783.

### 2.    Analysis of Lanham Act Claims

Because the Lanham Act does not contain a special rule for personal jurisdiction, the law of the forum governs. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), *as corrected* (May 12, 2014); Fed.R.Civ.P. 4(k)(1)(A). The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. General jurisdiction exists when the party's affiliations with the forum state "are so constant and pervasive as to render [it] essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Snow Systems has not asserted that this Court may exercise general jurisdiction over Sneller's, so this Court considers only specific jurisdiction.

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 571 U.S. 277, 284 (2014). It requires that "(1) the defendant [ ] purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

Where, as here, the plaintiff's claims are for intentional torts, the purposeful availment inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In such cases, courts look to whether the plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would

be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). This is known as the *Calder* test.

Sneller's argues that the Court lacks personal jurisdiction over Snow Systems' claims because Sneller's provides snow removal services only in the Grand Rapids and Lansing, Michigan areas, and there are "no contacts, let along [sic] minimum contacts" to hale Sneller's into court in Illinois. R. 12 at 4. Snow Systems' principal argument is that personal jurisdiction exists because Sneller's maintains a website accessible in Illinois, and Snow Systems suffered injury in Illinois, where it is headquartered. R. 13 at  But the Supreme Court in *Walden v. Fiore*—which neither party cites—flatly rejected the view that injury in the forum is enough. The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291; *see also Advanced Tactical*, 751 F.3d at 802 (no jurisdiction solely because defendant knew plaintiff could suffer harm in forum state). Instead, under *Walden*, the defendant's own allegedly tortious conduct must be directly connected to the forum state itself, and not just to the plaintiff who resides there, and that connection must be "substantial." *Id.* at 284, 286-88 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."). Moreover, for jurisdiction to lie, "a defendant's contacts with the forum State [must] be directly related to the conduct pertaining to the claims asserted." *Brook*, 873 F.3d at 552 (citing *Tamburo*, 601 F.3d at 702). Put another way, "[s]pecific jurisdiction must rest on the *litigation-specific*

conduct of the defendant in the proposed forum state" that relates to the "allegedly unlawful activity." *Advanced Tactical*, 751 F.3d at 801 (emphasis in original).

Neither party discusses the Seventh Circuit's recent decision in *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520 (7th Cir. 2018), which is controlling here. There, the plaintiff sued the defendant alleging among other things trademark infringement and unfair competition under the Lanham Act based on the parties' similar names. Both parties managed money for affluent clients, but while the plaintiff was based in Illinois and had a nationwide presence, the defendant was based in Florida and did not. The court applied *Walden* and concluded that the defendant was not subject to jurisdiction in Illinois, concluding that "[i]f infringement happened, that wrong occurred in Florida, or perhaps some other state where people who wanted to do business with [the plaintiff] ended up dealing with [the defendant] because of the similar names. That state cannot be Illinois, where [the defendant] lacks clients." *Id.* at 523.

Here, there is no allegation that Sneller's has clients other than in the Grand Rapids and Lansing, Michigan areas. Nor is there even an allegation that Sneller's has sought clients outside of those areas. But there is more: Sneller's submitted a declaration by its president, Jeff Snellers, in connection with its motion. That declaration states that Sneller's provides snow removal services only in Michigan, has never provided them elsewhere, and has not marketed, advertised, or offered them elsewhere. R. 11-1 ¶ 7-9, 12. Snow Systems failed to refute these assertions through its own evidence. The Court thus accepts them as true. *GCIU-Emp'r Ret.*

*Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Accordingly, as in *Ariel Investments*, if trademark infringement (or dilution, unfair competition, etc.) happened, it happened in Michigan, not in Illinois, and jurisdiction is not proper here. The fact that Sneller's may have known of Snow Systems and its business and that it could suffer harm in Illinois does not change the result. *Ariel Investments, LLC*, 881 F.3d at 522 ("Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law.").

Nor does Sneller's website help. First, the website is geared toward clients and potential clients in *Michigan*, not Illinois; it expressly indicates that it provides services in Grand Rapids and Lansing, Michigan, provides weather reports local to those areas alone, and includes company contact information local to the area. R. 12 at 6-7; R. 11-1 ¶¶ 20, 23-37. Next, it is a "passive" website in any event; the website merely displays information, and does not allow customers to purchase snow-removal (or any other) services or products. *See* R. 11-1 ¶ 22; *see also Illinois v. Hemi Group, LLC*, 622 F.3d 754, 759 (2010) ("a website that provides only information does not create the minimum contacts necessary to establish personal jurisdiction in a particular state"). But even interactive websites are questionable bases upon which to rely for jurisdiction. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("'Courts should be careful . . . to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" (quoting *Hemi Group, LLC*, 662 F.3d at

760)). Indeed, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." *See Advanced Tactical*, 751 F.3d at 803 (interactive website not enough to establish jurisdiction because "interactivity of a website is a poor proxy for adequate in-state contacts" and it was "unclear" how the website's interactivity "affected the alleged trademark infringement" in any event); *see also be2 LLC*, 642 F.3d at 559 ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state," haling the defendant into court in that state would "offend[ ] the Constitution").

There are no allegations and no evidence that Sneller's website targeted customers in Illinois. Nor can there be. Again, Sneller's website offers services exclusively to customers in Michigan, consistent with its historical business practice of providing services solely in Michigan. That Sneller's operates a website with a domain name similar to Snow Systems' trademark is of no moment for the same reason. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (no jurisdiction simply because plaintiff alleged defendant maintained a website with domain name similar to plaintiff's trademark and arguably caused harm through website, where website pertained to services in Texas, not Illinois).

Snow Systems relies on *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) to argue for jurisdiction here, but that case is easily distinguished. There, the court found jurisdiction over the plaintiff's Anti-cybersquatting Consumer

Protection Act claim in part because the defendant marketed extensively in Illinois—including by placing physical advertisements in Illinois venues—and received "many millions of dollars annually from Illinois customers." *uBid, Inc.*, 623 F.3d at 428. But here, only Snow Systems does business in Illinois, and only Sneller's does business in Michigan. And there has been no allegation that Sneller's has received or even sought a cent of business from Illinois-based clients. Nor does Sneller's website indicate otherwise. Snow Systems' reliance on *IPOX Schuster, LLC v. Nikko Asset Management Company, Ltd.*, 191 F. Supp. 3d 790 (N.D. Ill. 2016) and *Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F. Supp. 2d 824 (N.D. Ill. 2000) also fails; both concern the defendant's solicitation of and interaction with Illinois customers—something which Snow Systems does not contend occurred here. *See IPOX Schuster, LLC*, 191 F. Supp. 3d at 799 (jurisdiction proper in Lanham Act case, including because defendant's website marketed its products to Illinois citizens); *see also Euromarket Designs, Inc.*, 96 F. Supp. 2d at 838 (jurisdiction proper in Lanham Act case where defendant's highly interactive website "actively solicit[ed] all users, including residents of Illinois, to purchase goods").

Snow Systems also points to Sneller's other alleged contacts with Illinois as separately establishing jurisdiction. Specifically, that Sneller's 1) was featured in industry-wide publications that are distributed to Illinois recipients (among others) and also available online, 2) developed an application titled "Sneller Snow Systems" that may be purchased by Illinois residents (and others), 3) purchased the keyword "SNOW SYSTEMS" for internet advertising, 4) has over 1,200 Facebook user "likes",

5) attended trade shows and symposiums in Illinois (and won awards there under the "Sneller Snow Systems" name), 6) is a member in nationwide trade organizations along with Illinois members like Snow Systems, and 7) received a $45,000 snow removal system free of charge through a partnership with an Illinois manufacturer. *Id.* at 7-10. Through its president's declaration, Sneller's specifically refutes that it purchased an Internet keyword for "SNOW SYSTEMS." But even accepting all of Snow Systems' allegations as fact, they fail to establish jurisdiction over Sneller's.

First, Snow Systems cannot rely on the publications featuring Sneller's, where there has been no allegation that those publications were directed specifically to Illinois residents, let alone intended to gain Sneller's business in Illinois. *Compare Walden*, 571 U.S. at 287-88 (noting that jurisdiction existed in *Calder v. Jones*, 465 U.S. 783 (1984) because the injury alleged would not have occurred "but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens," and "California [wa]s the focal point of both the story and the harm."); *Yeager v. Innovus Pharm., Inc.*, 2019 WL 447743, at *3 (N.D. Ill. Feb. 5, 2019) ("by publishing an advertisement in a local newspaper directed at residents of Illinois concerning an Illinois resident, [defendant] created a connection between itself, Illinois, and this litigation"). That those stories were also available to Illinois residents via the Internet cannot change the analysis, and neither does Sneller's purported keyword purchase, or Facebook or other Internet-based presence. *See Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. May 16, 2016) (fact that Facebook is accessible to Illinois residents does not confer specific jurisdiction

over it where plaintiff did not allege Facebook directed the complained-of activities at Illinois residents); *see also Telemedicine Solutions LLC v. WoundRight Tech., LLC*, 27 F. Supp. 3d 883, 899-900 (N.D. Ill. 2014) (no personal jurisdiction where defendants' alleged contacts—including a Google ad using plaintiff's trademark as a search keyword, website, and Facebook page—"were targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses").

Snow Systems' reliance on Sneller's membership in nationwide trade organizations and attendance at symposiums and trade shows in Illinois also fails. Snow Systems does not explain how this membership and attendance connects Sneller's to Illinois for purposes of its claims against it. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, (7th Cir. 2014) ("Even assuming that [defendant's] attendance at the Illinois [trade show] bears on the personal-jurisdiction analysis in this case, he did so without any apparent intent to solicit business there."); *C.S.B. Commodities, Inc. v. Urban Trend (HK), Ltd.*, 626 F. Supp. 2d 837, 855-56 (N.D. Ill. 2009) (no personal jurisdiction in Lanham Act case where "there [we]re no allegations that the trade show was directed specifically at Illinois residents," or that sales to Illinois residents were made during or as a result); *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 965 (N.D. Ill. 2015) ("Even if Defendants' trade show attendance were enough, however, Plaintiffs have not shown that the factual basis of the alleged claims of patent infringement and trade secret misappropriation relates to Defendants' trade show activities."). Thus, these "connections" to Illinois are

attenuated at best. *See Walden*, 571 U.S. at 286 ("random, fortuitous, or attenuated contacts" are insufficient in the intentional tort context).

Sneller's partnership with an Illinois-based company for snow removal equipment fails for the same reason: there is nothing to connect that partnership to this litigation. *See Advanced Tactical*, 751 F.3d at 801 (sales in forum state did not subject defendant to personal jurisdiction where plaintiff submitted no evidence that those sales had any connection to defendant's alleged wrongdoing).

Simply put, there is no basis to hale Sneller's to court in Illinois on Snow Systems' claims. Indeed, even if Sneller's "adopted the Snow Systems word mark" to "increase its own goodwill and recognition" as Snow Systems argues, R. 12 at 10, it did so in Michigan, not Illinois. Snow Systems has failed to demonstrate otherwise. Accordingly, the complaint is dismissed.

## CONCLUSION

For these reasons, the Court grants Sneller's Landscaping, LLC's motion to dismiss, R. 11.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: March 22, 2019